UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAMS INTERNATIONAL CO., LLC,

Plaintiff,

v.

ZURICH AMERICAN INSURANCE CO., *et al.*,

Defendants.
_____________________________/

Case No. 4:20-cv-13277

Hon. F. Kay Behm
United States District Judge

**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE (ECF No. 288) AND DEFENDANTS' MOTION TO EXCLUDE (ECF No. 289)**

## I. PROCEDURAL HISTORY

Plaintiff Williams International Co., LLC is suing Defendants Zurich American Insurance Company; XL Insurance America, Inc.; General Security Indemnity Company of Arizona (GSINDA); and Aviva Insurance Limited alleging breach of insurance contracts arising out of the nonpayment of claims following a fire at a Williams manufacturing facility in Mexico. ECF No. 1.

Before the Court are Plaintiff's motion to strike the opinions of Defendants' proposed expert, Peter Kelly (ECF No. 288), and Defendants' motion to exclude the opinions and testimony of Plaintiff's proposed expert, Jeffrey M. Posner (ECF No. 289). Responses and replies have been filed to both motions. ECF Nos. 290, 292, 294, 295. For the reasons set forth below, both motions will be **GRANTED IN PART** and **DENIED IN PART.**

## II. FACTUAL BACKGROUND

This first-party property insurance coverage dispute arose out of a June 2020 fire that destroyed Plaintiff's manufacturing plant in Guaymas, Mexico. ECF No. 1. Destruction of the facility, which manufactured components for the engines and missiles that Plaintiff produces at its facilities in the United States, meant that Plaintiff's U.S. facilities could not produce finished goods to sell, causing a major disruption of Plaintiff's supply chain and substantial loss of business income. *Id.*, PageID.17.

Plaintiff secured global property and casualty policies from Defendants for the period from February 1, 2020, through February 1, 2021. *Id.*, PageID.23. The parties agree that the policies do not cover the physical property loss to the Guaymas facility. *Id.*, PageID.18. However, the parties dispute the extent of coverage under the policies for Plaintiff's loss of

business income from its facilities located in the U.S. Defendants argue that because the loss occurred in Mexico, a "Prohibited Jurisdiction," the Financial Interest of the First Named Insured Coverage (FINC) provision, ¶ 5.02.35, with a limit of $10 million, is the only coverage available. Plaintiff, on the other hand, argues that the loss of business income from its U.S. facilities is covered under the Time Element section of the Policy, specifically ¶ 4.01.01, which affords coverage up to the full policy limit of $400 million. In an order denying Defendants' motion for judgment on the pleadings, the Court found the language of ¶ 4.01.01 ambiguous, requiring extrinsic evidence to determine whether the parties intended for the loss of business income to be under the Time Element provision or the FINC provision. ECF No. 118, PageID.5025. The parties then filed cross motions for summary judgment, which the Court denied, concluding that "the conflicting extrinsic evidence as to the parties' intent for such coverage must be resolved by a jury." ECF No. 267, PageID.17290.

## III. LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial judge is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *see also Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 316 (6th Cir. 2019) (noting that courts consider whether the witness is "qualified" and whether the testimony is "relevant" and "reliable").

The relevancy threshold under Rule 702 "is low," requiring only that the testimony "logically advances a material aspect of the proposing party's case." *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017) (cleaned up; citation omitted); *see also United States v. Bonds*, 12 F.3d 540, 557 (6th

Cir. 1993) (explaining that the relevance inquiry asks whether the evidence relates to "any issue in the case").

In *Daubert*, the Supreme Court discussed factors that may be helpful in determining the reliability of a particular scientific "theory or technique," such as testing, peer review, error rates, and "acceptability" in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. Although the specific *Daubert* factors may not be applicable with respect to non-scientific experts, the court nonetheless must exercise its "gatekeeping" function to assess the reliability of other types of expert testimony, such as that based upon "other specialized knowledge." *Id.*; Fed. R. Evid. 702. "[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). Where non-scientific expert testimony is involved, "the *[Daubert]* factors may be pertinent," or "the relevant reliability concerns may focus upon personal knowledge or experience." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (citations omitted).

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008). In considering the admissibility of expert testimony, the Court bears in mind that "rejection of expert testimony is the exception, rather than the rule," and that "mere weaknesses in the factual basis of an expert witness' opinion...bear on the weight of the evidence rather than on its admissibility." *Id.* at 530-31. Rather than exclusion, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## IV. ANALYSIS

### A. Plaintiff's Motion to Strike Opinions of Defendants' Proposed Expert Peter Kelly (ECF No. 288)

Plaintiff's motion seeks to exclude certain opinions of Peter Kelly, an underwriter with thirty-five years of experience in the insurance industry, which it argues are based on Kelly's personal interpretation of the insurance contract or are opinions about the parties' state of mind when entering the

contract rather than his opinions about general custom and industry practice. ECF No. 288. Specifically, Plaintiff says that Kelly intends to offer testimony on whether the insurance policies at issue afford Plaintiff coverage, and whether, based on Kelly's interpretation of the parties' extrinsic evidence, the parties intended for coverage to exist. *Id.*, PageID.17508. Defendants argue that Kelly's testimony relates to custom, practice, and terms of art in the insurance industry and is therefore permissible. ECF No. 292.

"It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W. 2d 447, 454-55 (Mich. 2003) (citation omitted). And "[a]bsent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible." *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir. 1981). Defendants are correct that experts may testify about custom and practice in the insurance industry, as well as the meaning of any terms of art. However, as Plaintiff argues, Kelly's opinion at times goes beyond the scope of industry custom and practice. For example, in his report, Kelly explains that "[b]ased on [his] review of the US Quota Share Policies, the customs and practice of the industry and the materials provided by Counsel, Time Element losses

experienced by Williams International Co., LLC that were caused by an event in a Prohibited Jurisdiction were not intended to be covered under the US Quota Share Policies," and that "[g]iven the rules of Special Coverage application…the most the US Quota Share Policies would indemnify Williams for would be $10 million, the sublimit of FINC (and DIC/DIL)." ECF No. 288-2, PageID.17540-41. In so stating, Kelly offers his conclusion on the main issue in this case; whether Williams' losses are covered by the Time Element provision, affording coverage up to the full policy limit, or the more specific FINC or DIC/DIL sublimits, with coverage limited to $10 million. *See* ECF Nos. 118, 267.

In general, the portions of Kelly's opinion that interpret the contract "cross over the line between what can be fairly considered as expert opinion into territory which clearly constitutes a legal conclusion." *Shah v. Fortive Corp.*, No. 1:22-CV-00312, 2026 WL 1560583, at *2 (S.D. Ohio May 22, 2026). Kelly may offer testimony on general industry custom and practice, but he may not offer his own interpretation of the meaning of the contract as between the parties. *See In re ResCap Liquidating Tr. Litig.*, 432 F. Supp. 3d 902, 923 (D. Minn. 2020) ("Even when a contract is ambiguous, expert testimony is only permitted to the extent it clarifies technical terms or

provisions in the contract; an expert may not simply offer their personal opinion about a contract's meaning or applicability."); *S.E.C. v. Johnson*, 525 F. Supp. 2d 66, 70 (D.D.C. 2007) ("Therefore, although Hanson will be prohibited from addressing the specific meaning of this contract as between the parties, his testimony will be allowed in order to aid the jury in understanding the meaning of terms employed in the contract and industry practice with respect to such contracts."); *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 550 (6th Cir. 1981) ("The question of what the contract clause mean[s] [is] a factual one for the jury to determine from the testimony presented.").

Plaintiff also argues that Kelly's interpretation of key terms should be stricken, pointing specifically to his interpretation of the terms "Location" and "Insured Location." ECF No. 288, PageID.17515. Defendant argues that Kelly's opinion merely seeks to provide context for the terms, such as that "the term 'the Location' must refer to the defined term 'Insured Location'; otherwise, 'the Location' would result in 'coverage stemming from anywhere in the world,' which no insurer in the industry would intend." ECF No. 292, PageID.18090. However, neither "Location" or "Insured Location" are terms of art that would require expert testimony, but instead are terms that are

already defined by the contract, and which can be easily understood by a layperson. The "context" that Kelly seeks to provide on these terms is once again a conclusion regarding the scope of coverage provided in the Time Element provision. *See* ECF No. 118, PageID.5021 ("Applying these definitions to ¶ 4.01.01, the second paragraph's use of the broadly defined term **Location**, and not the more tailored 'Insured Location,' in the phrase 'the **Location** that sustained direct physical loss or damage caused by a **Covered Cause of Loss**' permits a reading which would afford Time Element loss coverage to plaintiff under the circumstances here."). Therefore, Kelly's interpretations of the terms "Location" and "Insured Location" in the policies are inadmissible. *See Builders Mut. Ins. Co. v. GCC Constr., LLC*, 711 F. Supp. 3d 899, 921 (E.D. Tenn. 2024) ("In this case, Warfel's opinion that GCC and Tahini's 'claim falls within the ambit of coverage provided under the applicable policy' as well as his opinion of what 'collapse' means in the context of the policy impermissibly interprets the policy at issue.").

Plaintiff next takes issue with the portion of Kelly's report that discusses rules of insurance policy interpretation, which it says are inadmissible legal conclusions and functions reserved for the Court. Insofar as these provisions provide Kelly's opinions on contract interpretation in general, Plaintiff is

correct that this is a function reserved to the Court. *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) ("[I]t is not for the witnesses to instruct the jury as to applicable principles of law, but for the judge.").

Finally, Plaintiff argues that Kelly's opinion regarding whether the parties intended for coverage to be available to Williams is impermissible because experts cannot testify as to state of mind. Plaintiff points to portions of Kelly's report in which he makes statements such as "the correspondence is clear that Aon fully understood the limitation of the coverage available in the US Quota Share Policies for any losses stemming from events in Mexico," and "a complete and exhaustive review of every piece of correspondence provided and every deposition makes it clear that the US Quota Share Insurers and Aon (acting in Aon's authorised capacity as agent for and advisor to the insured) had mutual and bilateral understanding that a maximum loss limit of $10 million would be a safety net for any losses sustained by Williams stemming from damage in Mexico because of the sub limits in the Special Coverage Section." ECF No. 288-2, PageID.17542, 17553. Defendants argue that Kelly's report does not opine on the parties' state of mind but instead merely summarizes the facts that he considered and that informed his

opinions in order to "evaluate whether the parties' conduct was consistent with industry custom and practice." ECF No. 292, PageID.18085.

"Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case," which is "within the competence of the jury." *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1013 (S.D. Ohio 2015); *see In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (explaining that experts may not offer opinions on the "intent, motives or states of mind of corporations, regulatory agencies and others" because these opinions "have no basis in any relevant body of knowledge or expertise"). For this reason, Kelly may not opine on the parties' understanding when entering into the contracts or on the parties' state of mind or intent in general. *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) ("Bigelow's opinion regarding whether the parties *intended* to enter a lending relationship or a joint venture relationship was not admissible. The intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent.").

Overall, Kelly may not interpret the language of the policies as between the parties, including the terms "Location" and "Insured Location" as they are used in the policies, or opine on the parties' intent, motive, or state of mind, and these opinions are therefore excluded. Although Plaintiff requests that the impermissible portions of Kelly's opinions be stricken, the Court will not engage in the exercise of reviewing Kelly's report line by line and striking any impermissible inclusions because "[t]hese line-by-line objections to testimony are more appropriately addressed at trial." *Templeton v. Bishop of Charleston*, No. 2:18-CV-02003-DCN, 2021 WL 3419442, at *8, n.3 (D.S.C. Aug. 5, 2021). For this reason, Plaintiff's motion is granted only in part.

### B. Defendants' Motion to Exclude the Opinions and Testimony of Plaintiff's Proposed Expert, Jeffrey M. Posner (ECF No. 289)

Defendants' motion seeks to exclude the opinion of Jeffrey Posner, who they say lacks the requisite specialized knowledge about commercial property insurance underwriting and brokering. ECF No. 289. In the alternative, they ask the Court to exclude Posner's improper opinions related to interpretation of the contract provisions at issue and the parties' state of mind and intent, and to exclude his testimony because it is unreliable and unsupported. *Id.*, PageID.17749. Plaintiff argues that Posner is qualified to

testify as an expert because he has 50 years of experience in the insurance industry and that his opinions are proper and supported. ECF No. 290.

Posner is offered as an expert in insurance industry customs and practice, and his opinions are primarily that it is customary for commercial property insurance policies to include coverage for interdependency risk, which is "the risk that an event at one location can impact operations at another location," and that if insurers want to exclude or limit coverage, they must say so clearly and in writing. ECF No. 289-5, PageID.17939.

First, Defendants argue that Posner cannot offer opinions on the custom and practices of the insurance industry as they relate to the underwriting and brokering of commercial property insurance policies because he "is not a current or former commercial property underwriter, nor has he ever worked as a commercial underwriter," he "has never been responsible for drafting insurance policy language," and he "has never worked as a broker to place commercial property insurance." ECF No. 289, PageID.17755-56. Plaintiff argues that Posner, as the director of corporate risk and chairman of the board of a captive insurance company, "directly managed all aspects of W.R. Grace's international insurance programs, including issuing and purchasing commercial property insurance policies

annually, around the world, on an admitted and non-admitted basis including prohibited jurisdictions such as Mexico," and "he was responsible for all underwriting and claim handling functions, including the issuance of insurance policies and working with commercial insurance markets on both a direct and reinsurance basis." ECF No. 290, PageID.17967. Plaintiff further argues that he "was directly involved with both underwriting and brokering, and is familiar with the underwriting process, including evaluating risk and preparing and issuing both standard and manuscript policies." *Id.*

According to his report, Posner has fifty years of experience in the insurance, brokerage, and risk management fields, including placement of multi-national property and liability insurance programs covering international risks. *Id.*, PageID.17940. He was the Director of Corporate Risk Management at W.R. Grace & Co., and the Chairman of the Board of Directors of a captive insurance company for W.R. Grace & Co, and in these capacities, he had experience designing and implementing global insurance programs which covered international risks and handling international property and liability insurance claims under global insurance policies, as well as purchasing "domestic and international insurance policies for large commercial risks on an outsourced basis." *Id.*, PageID.17952. As chairman

of the board of a captive insurance company that insured international risks, he was responsible for issuing more than 100 policies. *Id.* It is true, as Defendants point out, that he was never an underwriter or broker for commercial property insurance. In his deposition, Posner testified as follows:

> **Q:** Okay. Have you ever worked as a broker? Sorry. On the placement side, the underwriting side.
>
> **A:** I have not. I was on the claims side. I was not a placing broker when I was at Marsh.
>
> **Q:** Have you worked as an underwriter?
>
> **A:** Not as a commercial underwriter, but I was the chairman of the board of a captive insurance company responsible for all of its underwriting operations and its claims operations.

ECF No. 289-2, PageID.17783.

However, despite not having worked as an underwriter or broker, Posner has experience in the insurance industry generally, including working with brokers to place insurance policies and management of underwriting and claims operations. His testimony on the customs and practices of the insurance industry in general may still prove helpful to the jury in understanding the type of policies and risks present in this case, and the general considerations present when assessing these risks. Therefore, rather than exclude his testimony in its entirety due to his lack of direct experience in

underwriting and brokering, as Defendants request, to the extent that Posner's testimony strays beyond his qualifications Defendants may use cross-examination to expose his qualifications, or lack thereof, to testify in those areas. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998) ("[D]efense counsel cross-examined Kitzes regarding his qualifications to testify in the areas in question, and the district court instructed the jury that they were to determine the weight and credibility to be given Kitzes' testimony. Therefore, the jury was free to give Kitzes' testimony as much credence as it felt the testimony deserved, particularly in light of Defendants' cross-examination exposing Kitzes' lack of familiarity with the given topics.").

Defendants argue in the alternative that Posner should not be able to provide his opinion on the interpretation of the contract as between the parties or on the parties' state of mind or intent. As discussed extensively above in relation to Defendants' proposed expert, Peter Kelly, these opinions are indeed impermissible. *See, e.g.*, ECF No. 289-5, PageID.17945, Posner Report ("As I have stated above, coverage for the Interdependency Risk is built into the Policies via the second Insuring Agreement of the Time Element Coverage in Paragraph 4.01.01 of Section IV."); *Id.*, PageID.17950 ("It is clear from the above referenced testimony/communications that the Insurers

understood the Interdependency Risk presented by Mexico."). As with Kelly, Posner may not opine on the meaning of the contract between the parties or on their state of mind or intent.

Finally, Defendants argue that Posner's testimony should be excluded because it is unreliable and unsupported. ECF No. 289, PageID.17764. They take specific issue with Posner's use of the term "interdependency risk," which they say does not appear in the Policies, and with his failure to consider all the relevant facts and materials available to him before rendering his opinion. *Id.*, PageID.17765.

Related to Posner's use of the term "interdependency risk," Defendants argue on one hand that the concept is not rooted in any accepted authority in the insurance industry, but on the other hand acknowledge that the term shows up in the extrinsic evidence in relation to the risk the Guaymas facility posed. *Id.*, PageID.17767 ("For example: (i) XL's August 2019 Loss Prevention Survey, which was prepared after XL inspected Williams' Guaymas facility, noted that the Guaymas facility— which was an insured location at the time of the Survey—presented an increased risk of fire and a 'high interdependency risk'...."). But Posner does not claim that the term appears in the policies; instead, he uses it to describe the general risk that a loss at

one facility can pose to the operations of another. Defendants take issue with the fact that he offers no credible basis for this concept, such as a treatise, white paper, or industry guideline, but as Plaintiff points out, "Rule 702 expressly contemplates that an expert may be qualified on the basis of experience," and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Civ. P. 702, advisory committee note, 2000 amend. To the extent that Defendants take issue with Posner opining that the policies at issue clearly covered the "interdependency risk" stemming from the Guaymas facility or that the parties intended to cover the "interdependency risk," the Court has already explained that neither expert may offer testimony that interprets the policies or opines on the parties' state of mind, and therefore this testimony would be impermissible for that reason. The same applies to Defendants' argument that much of Posner's testimony interpreting the policies should be excluded because he failed to consider all of the policy language or factual record; any interpretation of the policies as between the parties is inadmissible, and it is therefore irrelevant whether his proposed interpretation is based on the policy language and underlying available facts. Insofar as Defendants claim that any of Posner's admissible opinions lack a reliable foundation,

"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Strike the Opinions of Proposed Expert Peter Kelly (ECF No. 288) and Defendants' Motion to Exclude the Opinions and Testimony of Propose Expert Jeffrey Posner (ECF No. 289) are both **GRANTED IN PART** and **DENIED IN PART** without prejudice. The opinions of each expert will be subject to the limitations set forth above.

**SO ORDERED.**

Date: September 17, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge